**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIMOTHY RAY SPENCER,

      Petitioner,                      Civil No. 2:06-12133
                                          HONORABLE MARIANNE O. BATTANI
v.                                       UNITED STATES DISTRICT JUDGE

JERRY HOFBAUER,

      Respondent,
_____/

<u>**OPINION AND ORDER DENYING THE**</u>
<u>**PETITION FOR WRIT OF HABEAS CORPUS**</u>

      Timothy Ray Spencer, ("Petitioner"), presently confined at the Huron Valley

Men's Complex in Ypsilanti, Michigan, has filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court

conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b). For the

reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. Background

      Petitioner was convicted of the above offense following a jury trial in the

Lapeer County Circuit Court. [1] This Court recites verbatim the relevant facts

regarding petitioner's conviction from the Michigan Court of Appeals' opinion

affirming his conviction, which are presumed correct on habeas review. *See Long*

*v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

---

[1] Petitioner was also convicted of second-degree murder, first-degree criminal sexual conduct, and carjacking, but these convictions were vacated at sentencing on Double Jeopardy grounds.

The victim in this murder case was an eighteen-year-old student at East High School in Lapeer who was killed on March 5, 1997. The prosecution's main witness was Daniel Schreiber, an inmate in the Monroe County jail who knew Spencer during a portion of his incarceration. Schreiber, an Ohio resident, had been transferred to Monroe County in conjunction with an outstanding warrant for larceny for conversion over $ 100.00. The prosecutor eventually dismissed the charges against Schreiber, although allegedly not in return for Schreiber's testimony. Schreiber claimed that he provided information against Spencer because it just started eating him up because he had a daughter the victim's age. Schreiber also stated that, at first, he did not believe Spencer's story. He also maintained that the police did not provide him with any details of the killings.

According to Schreiber, while he and Spencer were in adjacent glass jail cells in January and February 1998, they spoke about Spencer's crime, with Spencer using Schreiber as a "legal sounding board." Spencer told Schreiber that, in addition to the carjacking he was charged with in Monroe County, he was under investigation for a homicide in Lapeer County. Spencer explained that, at the time of the murder, he was living at the Red Oaks Motel, was unemployed, and had "got back into alcohol and drugs real heavy"; a friend had died recently from a drug or alcohol related cause, causing Spencer to go on a "drinking rampage." Spencer was working at the motel to pay his rent.

Spencer reportedly said that he and another friend were drinking together late into the night on March 4, 1997 and, on the morning of the March 5, he took that friend's wallet and walked to a gasoline station with a convenience store to get some cigarettes. There, Spencer ran across a young woman he knew, whom he convinced to give him a ride. Spencer then pulled out a single action revolver that he had obtained from his deceased friend and made some "sexual overtures" toward her. She "rebuffed" him and told him that she was sick and had called home, so her mother was expecting her. Spencer then forced her to drive to a wooded hunting area and park in a place that could not be seen from the road where people routinely practiced target shooting. Spencer said that the woman tried to run, but he grabbed her and struck her in the head with the handgun. The woman fell to the ground, and Spencer began beating her. He then took her into the wooded area, raped her, and then choked her. Spencer put the victim's body

in the car and drove a short distance to a river, also inside the hunting area.  He put the victim's body in the river.  According to Schreiber, Spencer was "excited" about telling the story to him and acted elated.

Schreiber also said that Spencer told him that he then drove to a construction area and burglarized a house there.  Afterwards, he drove to a Kmart in Lake Orion.  Noticing that he had blood on his jeans, he purchased another pair of jeans, changed clothes in the car, and dumped his old jeans and some of his victim's belongings in a garbage dumpster near the store.  After considering what to do, he tried to approach a woman who was eating in her car in the Kmart parking lot and told her that she had left something in the Kmart but when she stated that she had not entered the Kmart, he thought it would be a good idea to leave.  At some point, Spencer left the car after wiping it with bleach.

Spencer then said that he went to a nearby restaurant and struck up a conversation with a waitress, telling her that his car had broken down.  The waitress stated that she would give him a ride, but a bus boy intervened and gave him a ride.  When Spencer got into the car with the bus boy he pulled a gun on him, but eventually let him go.  Spencer then drove to Monroe where he ran out of gasoline near a motel and was surrounded by police, who eventually arrested him after a standoff.

Spencer described the victim as very pretty in the face, but a big young woman who "fought like hell."  He claimed not to be worried about DNA evidence because he put the victim in the river after he killed her.  Spencer commented that the victim's car was small, which made it impossible for him to rape her in the car.  Spencer also told Schreiber that he had a very important 9:00 a.m. appointment to work that morning, but did not go because he was drunk; he started the criminal episode to get money.  At some point in the day, Spencer also used some of the money he had taken from his friend at the motel and the victim and used it to buy alcohol and crack cocaine.

Much of the additional testimony by the prosecution's witnesses corroborated Schreiber's testimony.  In particular, Dean Rothgeb, an assistant principal at Zemmer Junior High School in Lapeer, testified that, on the day of the murder, he saw the victim with another person in a car near the gasoline station.  Rothgeb saw the victim, who was driving the car, pull out of the gasoline station and turned in front of him.

He followed her car to the next light, moving next to it on the passenger's side at a distance of about six feet. Rothgeb described the passenger of the vehicle as a male with "modeled" or "messed up" hair wearing a jean jacket and a lighter colored shirt. The man was "smaller," and was looking down, and was "fooling" with something in his hands. During the course of the observation, the man looked back at him and stared at him. Rothgeb was able to view the passenger for about a minute and a half, the time between light changes. Rothgeb identified Spencer as the passenger and also stated that he had previously identified him at the preliminary examination and a later hearing. Rothgeb stated that Spencer had put on weight since he first saw him in 1997, and had a cleaner haircut, but he could still identify Spencer by his eyes. Rothgeb identified the victim's car as the one he saw on the date of the murder.

Beverly Carpenter, Spencer's friend, testified that he called her from jail, claiming that he did not remember a three-hour time gap between talking to the police early in the morning and walking to purchase cigarettes and finding himself in Oxford. According to Carpenter, Spencer also told her that he hitchhiked part of the way there and that the person who gave him a ride also sold him a gun. Spencer admitted to her that he got the busboy to give him a ride and then pulled the gun on him. Later, Carpenter and Spencer spoke numerous times on the telephone and discussed the victim's disappearance; Spencer told Carpenter that he had heard that the victim was missing and that the police were trying to pin it on him. During one of the conversations that occurred before police found the victim's body, Spencer admitted to Carpenter that the victim may have given him a ride from Lapeer to Oxford, apparently both admitting and denying being in the victim's car. On her own initiative, Carpenter recorded a number of these conversations. Carpenter also visited Spencer at the jail, apparently wearing a recording device at the behest of an Oakland County Sheriff Detective. During the visit, Carpenter related a "dream" she had had, that she saw Spencer driving with the victim down a dirt road where he "[got] violent" with the victim and took off after she was dead. According to Carpenter, Spencer did not respond verbally and did not admit any involvement in the victim's death, but acted visibly nervous, "fidgeting around," and refusing to make eye contact. Spencer did not want to talk about the victim after that.

Another of Spencer's acquaintances, Lisa Vaughn, also spoke with him

while he was in jail.  Spencer told Vaughn that he was not involved in the victim's death.  However, during one of their phone conversations, Vaughn told Spencer that, if he was in the victim's car "he'd better hope and pray he wiped all the prints off and he says yeah, I guess I better." Like Carpenter, Vaughn also visited Spencer at the jail while wearing a recorder, but he did not admit involvement in the victim's death.

*People v. Spencer,* No. 220714, * 1-3 (Mich.Ct.App. February 19, 2002).

Petitioner's conviction was affirmed on appeal. *Id.; lv. den.* 467 Mich. 909; 654 N.W. 2d 335(2002).  Petitioner then filed a post-conviction motion for relief from judgment, which was denied. *People v. Spencer,* No. 98-006522-FC (Lapeer County Circuit Court, February 9, 2004).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Spencer,* No. 254061 (Mich.Ct.App. August 20, 2004); *lv. den.* 472 Mich. 910; 696 N.W. 2d 721 (2005).  Petitioner now seeks habeas relief on the following grounds:

I. All of the ground for relief presented in this petition are exhausted and cognizable on federal habeas corpus review however any alleged or actual procedural default is excused by ineffective assistance of trial and appellate counsel.

II. Petitioner was denied the effective assistance of trial counsel in violation of the Sixth Amendment.

III. The identification of Petitioner by Dean Rothgeb violated Petitioner's right to due process where the identification procedure was impermissibly suggestive and there is a total absence of indicia of reliability of the identification independent of the impermissibly suggestive identification procedure.

IV. Petitioner was denied due process in violation of the Fourteenth Amendment when the trial court denied his motion for appointment of an expert witness in the field of eyewitness identification at public expense.

V. Petitioner's right to a fully informed jury under the Sixth Amendment was violated when the trial court refused the jury's repeated requests to rehear and review the testimony of Dean Rothgeb.

VI. Petitioner was denied due process in violation of the Fourteenth Amendment by the cumulative effect of the errors by the trial court relating to the eyewitness identification testimony of Dean Rothgeb.

VII. Petitioner was denied his right to confrontation in violation of the Sixth Amendment and his right to due process in violation of the Fourteenth Amendment when the trial court refused his request to admit tape recorded conversations between him and Beverly Carpenter and Lisa Vaughn in their entireties.

VIII. Petitioner's right to a unanimous verdict under the Sixth Amendment was violated when the trial court failed to instruct the jury that they had to agree unanimously on the predicate felony underlying the felony murder charge.

IX. Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth Amendment.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

6

Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claims # 2, # 5, and # 9. The readback of testimony/ineffective assistance of counsel claims.**

The Court will first discuss petitioner's second, fifth, and ninth claims together, because they are interrelated. [2]

For purposes of judicial clarity, the Court will address petitioner's fifth claim first. Petitioner contends that the trial court erred in refusing to grant the jurors' request to have Dean Rothgeb's testimony re-read to them.

There is no federal constitutional law which requires that a jury be provided with a witness' testimony. *See Bradley v. Birkett,* 192 Fed.Appx. 468, 477 (6th Cir. 2006). The reason for this is that there is no U.S. Supreme Court

---

[2] Petitioner's first "claim" is in actuality an argument advanced by petitioner that he has exhausted all of his claims with the state courts. Because respondent does not contend that any of the claims are unexhausted, it is unnecessary for this Court to address petitioner's exhaustion argument.

decision that requires judges to re-read testimony of witnesses or to provide transcripts of their testimony to jurors upon their request. *See Friday v. Straub,* 175 F. Supp. 2d 933, 939 (E.D. Mich. 2001).  A habeas petitioner's claim that a state trial court violated his right to a fair trial by refusing to grant a jury request for transcripts is therefore not cognizable in a habeas proceeding. *Bradley,* 192 Fed. Appx. at 477; *Spalla v. Foltz,* 615 F. Supp. 224, 233-34 (E.D. Mich. 1985).

In his second claim, petitioner contends that trial counsel was ineffective for failing to object to the trial court's refusal to re-read Rothgeb's testimony to them.  In his related ninth claim, petitioner contends that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claim on petitioner's appeal of right.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

In resolving petitioner's ineffective assistance of counsel claim, this Court

is mindful of the fact that federal courts note that there are two inherent dangers in re-reading testimony to a jury during its deliberations.  First, undue emphasis may be accorded such testimony by a jury.  Secondly, the limited testimony that is reviewed may be taken out of context by the jury. *See U.S. v. Padin,* 787 F. 2d 1071, 1076 (6th Cir. 1986)(collecting cases).  Indeed, the state trial court judge, in rejecting petitioner's claim on post-conviction review, indicated that he relied on these concerns as the basis for denying the jurors' request to have the testimony read back to them.  The trial court judge further indicated that he had conferred with both the prosecutor and defense counsel about this issue and that it was apparent to him that "both sides engaged the strategy that a read back may place undue emphasis upon the testimony of one witness over the other proofs." *See People v. Spencer,* 98-006522-FC, Slip. Op. at * 2-3.

*Strickland* states that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  In the present case, petitioner's ineffective assistance of counsel claim fails, because trial counsel, as a matter of strategy, may have preferred that the jury not re-hear Rothgeb's testimony. *See Bradley,* 192 Fed. Appx. at 477. Moreover, in light of the fact that the trial court judge indicated that he chose not to read back Rothgeb's testimony, on the ground that such readbacks are disfavored, petitioner is unable to show that there would have been a different outcome in the trial had counsel objected to

the judge's ruling concerning the re-reading of Rothgeb's testimony. *Id.*

Petitioner is not entitled to habeas relief on his second claim. Because petitioner

has failed to show that his trial counsel was ineffective, petitioner is unable to

establish that appellate counsel was ineffective for failing to raise this ineffective

assistance of trial counsel claim on his appeal of right. *See Johnson v. Smith,*

219 F. Supp. 2d 871, 883 (E.D. Mich. 2002). Petitioner is not entitled to habeas

relief on his second, fifth, and ninth claims.

### B. Claim # 3. The suggestive identification claim.

Petitioner next contends that the trial court erred in permitting Rothgeb's

in-court identification testimony, because Rothgeb had been subject to an unduly

suggestive identification procedure, in which he was shown a single photograph

of petitioner in the prosecutor's office. The trial court conducted a *Wade* hearing

on the suggestiveness of the identification procedure on March 20, 1999. The

trial court agreed that the procedure had been unduly suggestive, but concluded

that an independent basis existed for Rothgeb's in-court identification of

petitioner:

> "Based on the totality of circumstances, the court finds that there is a
> significant independent basis for Mr. Rothgeb's in-court identification
> of the defendant. The witness testified that he did not know the victim
> from his – excuse me. The witness testified that he did know the
> victim from his experience as a coach at her school. He did testify that
> he recognized the victim in the vehicle with the defendant. Further,
> there was ample time and lighting for the witness to get a good look at
> the defendant in the passenger seat of the vehicle.

Moreover, the distance between his vehicle and the other vehicle was only a few feet. Additionally, Mr. Rothgeb did testify that he was staring at the defendant when the defendant turned and looked right at him, thus, providing Mr. Rothgeb with a frontal view of the defendant.

Most importantly, Mr. Rothgeb's testimony indicates that he had some immediate concern as to what the victim was doing with this older man when she should have been in school and that she was probably going to be late.

The court believes that Mr. Rothgeb had to have a good look at the defendant to notice that he was much older than the victim, and that since he was concerned, he may have observed more closely than if he had been uninterested.

The court also finds as significant evidence supporting an independent basis for the in-court identification is the fact that the witness never made a prior identification of a third party as the individual in the vehicle with the victim, nor did he fail to identify the defendant on a prior occasion.

It's also significant that the witness never saw the photograph again after that one day and, again, identified the defendant again at today's hearing.

Therefore, the court is satisfied that there is an independent basis for Mr. Rothgeb's in-court identification of the defendant and defendant's motion to strike his identification testimony is considered and denied.

(Wade Hearing Tr., pp at 109-111).

The Michigan Court of Appeals upheld the trial court's finding that an independent basis existed for Rothgeb's in-court identification of petitioner. *Spencer,* No. 220714, Slip. Op. at * 4.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily

suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams*, 971 F. Supp. 1143, 1147-48 (E.D. Mich. 1997)(citing to *Neil v. Biggers*, 409 U.S. 188 (1972)). Five factors should be considered in determining the reliability of identification evidence:

> 1. the witness's opportunity to view the criminal at the time of the crime;
> 2. the witness's degree of attention at the time of the crime;
> 3. the accuracy of the witness's prior description of the defendant;
> 4. the witness's level of certainty when identifying the suspect at the confrontation; and,
> 5. the length of time that has elapsed between the time and the confrontation.

*Neil,* 409 U.S. at 199-200; *United States v. Gatewood*, 184 F. 3d 550, 556 (6th Cir. 1999).

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F. 2d 226, 230 (6th Cir. 1992); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

12

In this case, assuming that the pre-trial identification procedures were unduly suggestive, petitioner has failed to show, under the totality of circumstances, that the suggestiveness led to a substantial likelihood of an irreparable misidentification. First, Mr. Rothgeb testified that he was able to look at petitioner for one and a half to two minutes while his vehicle was several feet away from the vehicle in which petitioner was a passenger. Rothgeb's view of the car that petitioner was sitting in was unobstructed and the lighting conditions were good. This supports a finding that Rothgeb had an independent basis for his in-court identification of petitioner. *See United States v. Causey,* 834 F. 2d 1277, 1285 (6th Cir. 1987). Rothgeb further testified that was able to view petitioner face to face from a few feet away. Rothgeb further indicated that he was able to get a good look at petitioner's eyes. Moreover, Rothgeb never identified anyone else as being the passenger in the victim's car. These factors all support the trial court's finding that an independent basis existed for Rothgeb's in-court identification of petitioner. *See Robertson v. Abramajtys,* 144 F. Supp. 2d 829, 847 (E.D. Mich. 2001.). Additionally, contrary to petitioner's argument, the fact that Rothgeb testified that he recognized the victim as being one of the students from his school further bolsters the reliability of Rothgeb's in-court identification of petitioner being the person who was with the victim on the day of the crime, because it establishes that he was witnessing the events with a great deal of attention. *See Kado,* 971 F. Supp. at 1148.

Even if there were slight discrepancies between Rothgeb's initial description of the passenger in the victim's car and petitioner's appearance, this would be insufficient to render the in-court identification suspect, in light of the fact that Rothgeb was able to get a good look at petitioner and testified that he was certain in his identification of petitioner as being the suspect. *See Hill,* 967 F. 2d at 232-33 (in-court identification of alleged bank robber held admissible despite five years between incident and trial and slight inaccuracies in witness' description of robber, where witness' view of robber was brightly lit and unobstructed and she showed high degree of certainty in her in-court identification). Although there was a twenty month delay between the time that Rothgeb initially saw petitioner and his initial identification of him, the trial court properly concluded that Rothgeb's in-court identification was inherently reliable, in light of the weight of the other factors which favored the admissibility of the identification. *See U.S. v. Meyer,* 359 F. 3d 820, 826 (6th Cir. 2004).

Finally, the reliability of Rothgeb's in-court identification is supported by the fact that he "testified without equivocation" that petitioner was the passenger in the car with the victim. *See Howard v. Bouchard,* 405 F. 3d 459, 473 (6th Cir. 2005).

In addition to considering the reliability of the actual identification, courts also look to other evidence to determine whether, if the identification was tainted, permitting the identification was an error of sufficient magnitude to rise to a

constitutional level because of a very substantial likelihood of irreparable misidentification, or whether the error was harmless. *Robertson,* 144 F. Supp. 2d at 848.  In this case, petitioner's confession to Schreiber of his involvement in the crime makes the possibility of misidentification extremely low in this case. *Id.*

In this case, the Michigan Court of Appeals' decision that the totality of factors weighing towards a finding of an independent basis for the in-court identification outweighed the few factors weighing against a finding of an independent source was not an unreasonable application of clearly established federal law.  Accordingly, petitioner is not entitled to habeas relief on this claim. *See Robertson,* 144 F. Supp. 2d at 847-48.

**C.  Claim # 4.  The expert witness claim.**

Petitioner next contends that he was deprived of a fair trial when the trial court refused to appoint an expert witness in eyewitness identification, to explain to the jurors the adverse influence that the suggestive identification procedure had on Rothgeb's in-court identification of petitioner.

In *Moore v. Tate,* 882 F. 2d 1107, 1110-11 (6th Cir. 1989), the Sixth Circuit held that a defendant in a state criminal trial was not denied his constitutional right to a fair trial when the state trial court excluded expert testimony on the reliability of eyewitness identification, finding that the examination and cross-examination of a witness at trial affords a jury an adequate opportunity to assess the reliability of a witness' identification of the defendant.  Although the Sixth

15

Circuit noted that an expert witness' testimony might give jurors another perspective from which to assess an eyewitness' testimony, such testimony was not constitutionally required. *Id.; See also Buell v. Mitchell,* 274 F. 3d 337, 359 (6th Cir. 2001)("this court has recognized that a habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification").

In the present case, as the Michigan Court of Appeals noted in its opinion, *See Spencer,* No. 220714, Slip. Op. at * 5-6, petitioner's counsel questioned Rothgeb extensively about his identifications of petitioner, including discrepancies between his various identifications and the suggestive nature of the first identification procedure. Counsel addressed the problems with Rothgeb's identification of petitioner in closing argument and emphasized the dangers of eyewitness identification. The trial court also instructed the jury on the proper factors that it should consider in evaluating eyewitness testimony. Petitioner has therefore failed to show that an expert in eyewitness identification was necessary to ensure him a fair trial.

This Court notes that in support of his claim, petitioner points to the case of *Ferensic v. Birkett*, 451 F. Supp.2d 874, 883-87 (E.D. Mich. 2006), in which another judge in this district granted habeas relief on the ground that a habeas petitioner was deprived of the right to present a defense when the trial court excluded petitioner's expert witness in eyewitness identification from testifying at

16

petitioner's trial as a discovery sanction for defense counsel's failure to timely

provide a copy of the expert witness' report to the prosecution. The district court

further found that the petitioner's trial counsel had been ineffective in failing to

ensure the presence of his eyewitness identification expert. The Sixth Circuit

recently affirmed this decision, primarily on the basis that the exclusion of the

expert's testimony deprived the petitioner of a right to present a defense. *See*

*Ferensic v. Birkett,* 501 F. 3d 469 (6th Cir. 2007).

The Sixth Circuit's ruling in that case, however, is not determinative of

whether this Court should grant habeas relief from a state court conviction. A

federal habeas court may not overrule a state court for holding a view different

from its own, under the "contrary to" clause of the Antiterrorism or Effective

Death Penalty Act (AEDPA), when the precedent from the Supreme Court is, at

best, ambiguous. *See Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). A habeas

court may therefore only look at the holdings of the United States Supreme

Court as they existed at the time of the relevant state court decision to determine

whether the state court decision was contrary to, or an unreasonable application

of, clearly established federal law. *Mitzel v. Tate,* 267 F. 3d 524, 530-531 (6th

Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other

courts of appeals, when deciding whether a state court's decision was contrary

to, or an unreasonable application of, clearly established federal law. *Id.*

Because there is no clearly established Supreme Court law which requires the

appointment of an expert in eyewitness identification, the trial court's failure to do so would not entitle petitioner to habeas relief.

Moreover, unlike the facts in *Ferensic*, Rothgeb's identification of petitioner were not the sole or even primary evidence against petitioner. The primary evidence against petitioner was Daniel Schreiber's testimony that petitioner had confessed to him that he had committed the murder. Thus, the failure to appoint an expert in eyewitness identification was not prejudicial to petitioner. *See e.g. Greene v. Lafler,* 447 F. Supp. 2d 780, 795 (E.D. Mich. 2006)(defendant in robbery prosecution was not denied effective assistance of counsel due to trial counsel's failure to seek assistance of expert witness on identification, where counsel elicited testimony to discredit eyewitnesses' testimony, and there was evidence that defendant had confessed to committing crimes). Petitioner is not entitled to habeas relief on his claim.

### D. Claim # 6. The cumulative errors claim.

In his sixth claim, petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.*

**E. Claim # 7.  The right to present a defense  claim.**

Petitioner next claims that his right to present a defense was violated when the trial court refused to admit tape recordings that Carpenter and Vaughn made of their conversations with petitioner, in order to impeach their testimony. The Michigan Court of Appeals rejected this claim, because petitioner failed to identify anything in the audiotapes that had not already been addressed by the prosecutor or defense counsel when they questioned these witnesses in court. *Spencer,* No. 220714, Slip. Op. at * 7.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense.  This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on

ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689.  The

Supreme Court gives trial court judges "wide latitude" to exclude evidence that is

repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or

confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679

(1986)).

Moreover, under the standard of review for habeas cases as enunciated in

§ 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial

court's decision to exclude potentially helpful evidence to the defense was

erroneous or incorrect.  Instead, a habeas petitioner must show that the state

trial court's decision to exclude the evidence was "an objectively unreasonable

application of clearly established Supreme Court precedent." *See Rockwell v.*

*Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

Petitioner argues that these audiotapes should have been admitted into

evidence because they show that petitioner repeatedly denied committing the

crimes in his conversations with Carpenter and Vaughn.  However, Carpenter

and Vaughn both testified that petitioner denied any involvement in the victim's

death.  Because the audiotaped conversations between these women and

petitioner would have been cumulative of their in-court testimony, the trial court's

exclusion of the tapes did not deprive petitioner of his right to present a

meaningful defense. *See United States v. Blackwell,* 459 F. 3d 739, 755 (6th Cir.

2006).  Petitioner is not entitled to habeas relief on his seventh claim.

**F. Claim # 8. The jury unanimity claim.**

Petitioner next claims that the trial court deprived him of a fair trial because it failed to instruct the jury that in order to convict petitioner of first-degree felony murder, the jurors had to agree unanimously about which underlying felony offense should serve as the predicate offense for felony murder. The Michigan Court of Appeals rejected this claim, because the jury found petitioner guilty of both of the underlying felony offenses of carjacking and first-degree criminal sexual conduct, therefore, there was no danger that the jurors did not unanimously agree on which underlying felony served as the predicate for petitioner's felony murder conviction. *Spencer,* No. 220714, * 8.

There is no general requirement that a jury reach agreement as to the preliminary factual issues which underlie the verdict. *Schad v. Arizona,* 501 U.S. 624, 632(1991)(holding that a conviction of first degree murder under instructions that did not require jury to unanimously agree on one of the alternative theories of premeditated and felony murder did not violate due process). Therefore, the trial court's failure to instruct the jury that they must unanimously agree on which underlying felony offense that petitioner had committed in order to find him guilty of felony murder did not violate clearly established federal law so as to entitle petitioner to habeas relief. *See Reed v. Quarterman,* 504 F. 3d 465, 479-82 (5th Cir. 2007). Moreover, because petitioner was convicted of all of the underlying felony offenses that served as

predicate offenses for the felony murder conviction, the failure to give a unanimity instruction was harmless error at best. *See United States v. Smith,* 239 Fed. Appx. 157, 161 (6th Cir. 2007); *Murr v. United States,* 200 F. 3d 895, 906 (6th Cir. 2000). Petitioner is not entitled to habeas relief on his eighth claim.

### III. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

s/Marianne O. Battani

**HON. MARIANNE O. BATTANI**
UNITED STATES DISTRICT COURT

DATED: 2/06/08